IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CRIM. NO. 17-000742 SOM |
| | ) | |
| Plaintiff, | ) | |
| | ) | ORDER DENYING DEFENDANT'S |
| vs. | ) | MOTION FOR RECONSIDERATION |
| | ) | AND/OR A NEW TRIAL |
| MELVYN GEAR, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**ORDER DENYING DEFENDANT'S MOTION FOR
RECONSIDERATION AND/OR FOR A NEW TRIAL**

**I.        INTRODUCTION.**

Defendant Melvyn Gear was convicted by a jury of being
an alien in possession of a firearm in violation of 18 U.S.C.
§ 922(g)(5)(B).  That statute prohibits aliens "admitted to the
United States under a nonimmigrant visa" from possessing firearms
that have been shipped or transported in interstate or foreign
commerce.  Gear now moves for a new trial[1] on the ground that the
instructions to the jury and one of the court's in limine rulings
are inconsistent with *Rehaif v. United States*, 139 S. Ct. 2191
(2019), decided after the trial had concluded.  Neither the jury
instructions nor the pretrial ruling warrant a new trial, and the
court denies Gear's motion.

_____

[1]  Although the title of Gear's motion is "Motion for
Reconsideration and/or a New Trial," the only relief he requests
is a new trial.  ECF No. 122, PageID # 1280.  The court therefore
construes Gear's motion as a motion for a new trial.

## II.       BACKGROUND.

Gear, an Australian citizen, bought a Lithgow .22 caliber rifle when he lived in Australia.  ECF No. 125-4, PageID # 1397-98.  In 2013, Gear began working in the United States under what became a series of nonimmigrant visas.  ECF No. 125-5, PageID # 1410; ECF No. 125-11, PageID # 1471; ECF No. 125-6, PageID # 1417.

In August 2016, Gear's ex-wife, who resides in Australia, sent the Lithgow .22 caliber rifle to the residence that Gear shared with his new wife in Kailua-Kona on the Big Island.  *See* ECF No. 125-7, PageID # 1435; ECF No. 125-6, PageID # 1421.  The rifle was delivered on August 23, 2016, and it remained in Gear's residence until July 18, 2017.  ECF No. 125-6, PageID # 1421-22. At the time, Gear had an H-1B nonimmigrant visa that he had received on January 5, 2017. *See* ECF No. 125-11, PageID # 1471.

On May 31, 2017, Australian authorities informed United States law enforcement personnel that the rifle might have been shipped to Gear's residence in Hawaii.  ECF No. 125-6, PageID # 1416.  On July 18, 2017, after obtaining a warrant, four federal agents searched Gear's residence.  ECF No. 125-6, PageID # 1422. One of the agents, Christopher Kobayashi, testified that Gear initially claimed that he had thrown the rifle in a dump.  ECF No. 125-7, PageID # 1435-36.  When the agents confronted him with

the search warrant, however, Gear admitted that the rifle was in the garage.  ECF No. 125-7, PageID # 1436.

During their search, the agents also found evidence concerning Gear's immigration status.  Agent Kobayashi stated that, during his initial conversation with Gear, Gear acknowledged that "he couldn't possess a firearm in the State of Hawaii, because he was not a U.S. citizen."  ECF No. 125-7, PageID # 1434.  Gear gave Agent Kobayashi a copy of his passport. Gear's H-1B nonimmigrant visa was attached to a page in the passport.  ECF No. 125-7, PageID # 1455.  The opposite page of the passport included stamps indicating that Gear had been admitted to the United States on January 9, 2017, on an H-1B visa.  ECF No. 125-11, PageID # 1471.

At trial, the parties agreed on instructions the court should give the jury as to the elements of the crime of possession of a firearm in violation of 18 U.S.C. § 922(g)(5)(B). This court instructed the jury that the Government had to prove: (1) that Gear "knowingly possessed a Lithgow .22 rifle," (2) that "at some point before July 18, 2017, the Lithgow .22 rifle had been shipped and/or transported in foreign commerce from Australia to the United States," and (3) that Gear was "an alien who had been admitted into the United States under a 'nonimmigrant visa.'"  The parties stipulated that Gear had been admitted into the United States under a nonimmigrant visa.  ECF

No. 125-7, PageID # 1458.  However, the Supreme Court had not yet
decided *Rehaif*, and the jury was not instructed that the
Government had to prove that Gear knew that he had been admitted
to the United States under a nonimmigrant visa.  On May 10, 2019,
the jury found Gear guilty of possessing a firearm in violation
of § 922(g)(5)(B).  ECF No. 108.

On June 21, 2019, the Supreme Court issued its *Rehaif*
decision.  The Court examined the interaction between 18 U.S.C.
§ 922(g), which prohibits certain classes of individuals (such as
aliens admitted to the United States on nonimmigrant visas) from
possessing firearms, and 18 U.S.C. § 924(a)(2), which states that
"whoever knowingly violates" § 922(g) is subject to penalties of
up to 10 years of imprisonment.  The Court held that, for a
conviction under § 922(g), the Government had to establish both
that the defendant knowingly possessed a firearm *and* that the
defendant knew his or her status.  *Rehaif*, 139 S. Ct. at 2195-96,
2200.  As the Government now concedes, the instruction given to
the jury did not include any mention of the need to prove that
Gear knew that he had been admitted to the United States under a
nonimmigrant visa.  ECF No. 125, PageID # 1338.

On August 7, 2019, Gear moved for a new trial. He
appears to argue that, under *Rehaif*, he is entitled to a new
trial for two reasons: (1) the jury instructions omitted one of
the elements of the offense, and (2) he should have been allowed

4

to argue to the jury that he could not be convicted if he possessed the rifle for an innocent purpose.  ECF No. 122, PageID # 1280 & n.1.

## III.      STANDARD UNDER RULE 33.

Rule 33(a) of the Federal Rules of Criminal Procedure provides: "Upon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires.  If the case was tried without a jury, the court may take additional testimony and enter a new judgment."  A motion for new trial "is directed to the discretion of the judge" and should be granted "only in exceptional cases in which the evidence preponderates heavily against the verdict."  *United States v. Pimentel*, 654 F.2d 538, 545 (9th Cir. 1981) (quotation marks omitted); *accord United States v. Mack*, 362 F.3d 597, 600 (9th Cir. 2004) (reviewing the denial of a motion for new trial under Rule 33(a) under an abuse of discretion standard).  A district court's power to grant a motion for new trial is much broader than its power to grant a motion for judgment of acquittal, *United States v. Alston*, 974 F.2d 1206, 1211 (9th Cir. 1992); a new trial may be granted when the "interest of justice so requires."  Fed. R. Crim. P. 33(a).

**IV.      ANALYSIS.**

   **A.   Compliance with Rule 33's Time Limits.**

   Rule 33(b) provides time limits for filing a motion for
new trial:

> (1) Newly Discovered Evidence.  Any motion for a new
> trial grounded on newly discovered evidence must be
> filed within 3 years after the verdict or finding of
> guilty.  If an appeal is pending, the court may not
> grant a motion for a new trial until the appellate
> court remands the case.
>
> (2) Other Grounds.  Any motion for a new trial grounded
> on any reason other than newly discovered evidence must
> be filed within 14 days after the verdict or finding of
> guilty.

Gear's motion falls under the second category.  Because Gear

filed his motion 89 days after the jury delivered its verdict, it

was untimely.

   The court may consider an untimely motion for new trial

if "the failure to file it on time was the result of excusable

neglect."  Fed. R. Crim. P. 33 Advisory Committee Notes on 2005

Amendments; Fed. R. Crim. P. 45(b)(1)(B) (providing for an

extension "for good cause" on a party's motion if "the party

failed to act because of excusable neglect"); *see also Eberhart*

*v. United States*, 546 U.S. 12, 19 (2005) (holding that the time

limits in Rule 33 are not jurisdictional).

   In determining whether there was excusable neglect,

this court considers: "(1) the danger of prejudice to the other

party, (2) the length of delay and its potential impact on

judicial proceedings, (3) the reason for the delay, including whether it was within the reasonable control of the movant, and (4) whether the moving party's conduct was in good faith." *Pincay v. Andrews*, 389 F.3d 853, 855 (9th Cir. 2004) (citing *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993)).  The movant bears the burden of establishing excusable neglect.  *United States v. Nasir*, 2018 WL 2247217, at *1 (D. Del. May 16, 2018); *see also Lowery v. Barclay*, 2014 WL 47349, at *9 (D. Ariz. Jan. 7, 2014).

Trial courts often find that defendants who file motions for new trial after an intervening change in the law satisfy that burden.  *See, e.g.*, *United States v. Kirsch*, 151 F. Supp. 3d 311, 315 (W.D.N.Y. 2015) ("There is no dispute that a significant intervening change in law constitutes a valid basis to extend time[.]"); *United States v. Maricle*, 2010 WL 3927570, at *3 (E.D. Ky. Oct. 4, 2010) ("In short, the significant intervening change in the law is a valid reason for delay in filing the postverdict motions.").

The Government nevertheless asserts that *Rehaif* cannot justify the untimeliness of Gear's motion because Rule 33(b) establishes a 14-day time limit, and Gear did not file his motion for a new trial until 47 days after *Rehaif*.  *See* ECF No. 125, PageID # 1342.  An extension based on an intervening change in the law, however, might not be "limited to 14 days from the date

7

of issuance." *See Kirsch*, 161 F. Supp. 3d at 315.  A court might instead need to apply the four *Pioneer* considerations to the specific facts before it.  *See id.*  Here, three out of the four factors either favor Gear or are, at best, neutral.  As to the first two factors, the prejudice to the Government and the impact on judicial proceedings appears to be minimal.  Gear's motion for a new trial caused only a short delay in his sentencing, and there are no other outstanding issues in this case.

The Government contends that it will suffer prejudice from Gear's untimely motion because its lead attorney's schedule between late August 2019 and April 2020 may prevent him from participating in a potential retrial.[2]  According to the Government, if Gear had filed his motion earlier, a new trial could have been scheduled before late August.  *See* ECF No. 125, PageID # 1343-44; ECF No. 125-12, PageID # 1472-73.

As an initial matter, Gear's trial lasted only four days.  Because the length of a retrial would be similar, it should be possible to schedule a new trial on a date that accommodates the Government attorney's schedule.  More

---

[2] The Government's lead attorney maintains that he is currently preparing for a complex trial that is scheduled for October 1, 2019.  He is also participating in cases that are scheduled for trial on December 10, 2019, January 13, 2020, and February 3, 2020.  Finally, an additional trial may be rescheduled for November 2019, although defense counsel would prefer to schedule that trial for 2020.  ECF No. 125-12, PageID # 1472-73.

significantly, the Supreme Court decided *Rehaif* on June 21, 2019.
Even if Gear had filed his motion within 14 days (*i.e.*, by July
5, 2019), as the Government contends he should have, *see* ECF No.
125, PageID # 1344-45, Gear's reply brief in support of his
motion would not have been filed until August 2.  Thus, even if
Gear had filed this motion on July 5, it is unlikely that a new
trial could have been scheduled before late August.
Consequently, any prejudice suffered by the Government is a
result of the timing of *Rehaif*, not of Gear's failure to move for
a new trial immediately after that decision.

        The fourth factor also favors Gear.  There is no
evidence that Gear acted in bad faith by intentionally delaying
his motion.  According to Gear, he filed his motion for a new
trial as soon as his attorney discovered *Rehaif*.  ECF No. 128,
PageID # 1505.  This court is not persuaded by the Government's
suggestion that Gear may not be acting in good faith.  The
Government says that, but for Gear's stipulation that he was in
the United States under an nonimmigrant visa, the Government
would have introduced additional testimony that would have
demonstrated that Gear knew that he had entered on a nonimmigrant
visa.  There is no evidence that Gear stipulated to avoid that
testimony.  Gear could not have predicted that the witnesses
would have testified to his knowledge.  Moreover, to the extent
an examination of bad faith is relevant to the *Pioneer* analysis,

the bad faith appears to relate to a delay in seeking a new trial, not to alleged bad faith during trial.

That leaves only the third *Pioneer* factor: the reason for Gear's delay. Gear's counsel explained that he did not file this motion until August 7, 2019, because he did not learn about *Rehaif* until that date. He asserts that because *Rehaif* was decided well after the jury rendered its verdict, he had no reason to conduct research that would have led him to discover *Rehaif* earlier. ECF No. 128, PageID # 1505.

While that explanation might be insufficient if Gear's attorney had failed to discover an intervening change in the law for years, a delay of 47 days after a Supreme Court decision that issued after trial concluded could conceivably constitute excusable neglect. *See Kirsch*, 161 F. Supp. 3d at 317 (defendant who filed motion for new trial 37 days after intervening Supreme Court decision established excusable neglect); *United States v. Sprouse*, 2011 WL 2414322, at *3-4 (W.D.N.C. June 10, 2011) (delay excusable even though trial court *sua sponte* raised significance of Supreme Court decision five weeks after it was issued), *rev'd on other grounds*, 517 F. App'x 199 (4th Cir. 2013). This court, however, need not decide that issue, because even if Gear establishes excusable neglect, his motion fails, as discussed below.

## B. The Failure to Instruct the Jury that Gear's Knowledge of His Nonimmigrant Status was an Element of the Crime was Harmless.

Gear argues that he is entitled to a new trial because the jury was not instructed that the Government had to prove beyond a reasonable doubt that he knew he had been admitted to the United States on a nonimmigrant visa.  ECF No. 122 at 1279-80.  The Government concedes that, after *Rehaif*, the jury instructions were incomplete, ECF No. 125, PageID # 1338, but argues that any error was harmless.  ECF No. 125, PageID # 1347.  This court agrees.

The harmless and plain error standards set forth in Rule 52 of the Federal Rules of Criminal Procedure apply to new trial motions.  *See United States v. Santiago*, 2019 WL 4040323, at *1 (N.D. Cal. Aug. 27, 2019).  Under the harmless error standard in Rule 52(a), even if a defendant preserves an argument by objecting, "[a]ny error, defect, irregularity, or variance that does not affect substantial rights must be disregarded."  If a defendant fails to preserve an argument, the court reviews for plain error under Rule 52(b).  "The plain-error standard applies even if, as is the case here, there were no legal grounds for challenging the instructions at the time they were given, but such legal grounds have since arisen due to a new rule of law arising between the time of conviction and the time of appeal."  *United States v. Pelisamen*, 641 F.3d 399, 404 (9th Cir. 2011).

Gear understandably did not expressly preserve any claim that the jury instructions should have stated that his knowledge of his immigration status was an element of the offense. A defendant ordinarily must inform the court of the action the party wishes the court to take "when the court's ruling or order is made or sought" to preserve a claim of error. Fed. R. Crim. P. 51(b). Although Gear raised the possibility that the Government had to prove that he knew that he entered the United States on a nonimmigrant visa in his trial memorandum and his opposition to the Government's first motion in limine, *see* ECF Nos. 61 and 80, he neither objected to the jury instruction setting forth the elements of the offense nor proposed an alternate jury instruction. ECF No. 125-1, Page ID # 1365-66, 1369. It therefore appears that this court should review for plain error. Fed. R. Crim. P. 51(b); Fed. R. Crim. P. 52(b).

The Government contends that Gear's approval of the proposed jury instructions renders plain error review unavailable. ECF No. 125, Page ID # 1346-47. Waiver, which precludes plain error review, is the "intentional relinquishment of a known right." *United States v. Olano*, 507 U.S. 725, 733 (1993) (quotations omitted); *accord United States v. Kaplan* 836 F.3d 1199, 1216 (9th Cir. 2016) (a criminal defendant "waives a right when it is intentionally relinquished or abandoned"). *Rehaif* was not decided until the trial in this matter had

concluded.  Accordingly, Gear could not have intentionally

relinquished any objections to the jury instructions on the

ground that they failed to comply with *Rehaif*.

This court need not decide whether harmless error or

plain error applies here.  Under either standard, Gear's

substantial rights must have been affected.  This court applies

the harmless error standard, which is more favorable to Gear in

that it places on the Government the burden of establishing that

Gear's substantial rights were not affected.[3]  *United States v.*

*Endicott*, 869 F.2d 452, 454 (9th Cir. 1989).  The omission of an

element from a verdict form is harmless if "it appears beyond a

reasonable doubt that the error complained of did not contribute

to the verdict obtained."  *Neder v. United States*, 527 U.S. 1, 15

(1999).

In *Neder*, the Supreme Court held that "where a

reviewing court concludes beyond a reasonable doubt that the

omitted element was uncontested and supported by overwhelming

evidence, such that the jury verdict would have been the same

---

[3] Under the plain error standard, "[i]t is the
defendant rather than the Government who bears the burden with
respect to prejudice."  *United States v. Olano*, 507 U.S. 725, 734
(1993).  The Second Circuit has suggested that this is not always
the case.  *See United States v. Viola*, 35 F.3d 37, 42 (2d Cir.
1994) (holding that the burden shifts to the Government when a
error was not apparent until after an intervening Supreme Court
decision), *abrogated on other grounds by Salinas v. United*
*States*, 522 U.S. 52 (1997).  The Ninth Circuit has not joined the
Second Circuit.  *See Pelisamen*, 641 F.3d at 404-05 (questioning
whether *Viola* remains good law but not deciding the issue).

absent the error, the erroneous instruction is properly found to be harmless." 527 U.S. at 17. If the omitted element is contested and the defendant submits contrary evidence, a court should ask "whether the record contains evidence that could rationally lead to a contrary finding with respect to the omitted element. If the answer to that question is 'no,' holding the error harmless does not reflect a denigration of the constitutional rights involved." *Id.* at 19 (quotations and brackets omitted). In *Neder*, for instance, the jury instructions did not inform the jury that materiality was an element of a tax fraud conviction. *Id.* at 6-8. That error was harmless because uncontested evidence showed that the defendant had failed to report over $5 million in income, and that misstatement was obviously material. *Id.* at 17.

Similarly, here, the omitted element (that Gear knew that he had entered the United States on a nonimmigrant visa) was supported by overwhelming evidence. As an initial matter, there is no dispute that Gear entered the United States on an H-1B visa or that an H-1B visa is a nonimmigrant visa. *See* ECF No. 125-6, PageID # 1416.

As this court reads the applicable law, the Government needed to establish that Gear knew that he possessed an H-1B visa (a question of fact), not that Gear knew that an H-1B visa was a nonimmigrant visa (a question of law). The distinction between

14

proving knowledge of what kind of visa Gear had and knowledge that the visa is in the category of "nonimmigrant visas" is a distinction this court makes here.

Rehaif held that the Government had to prove that a defendant knew that he or she was a member of the class of persons prohibited from possessing firearms under one of § 922(g)'s subsections.  139 S. Ct. at 2195-96, 2200.  Depending on the subsection at issue, the Government may have to prove that a defendant knew certain matters of law.  For instance, Rehaif addressed § 922(g)(5)(A), which prohibits aliens who are "illegally or unlawfully in the United States" from possessing firearms.  Because membership in that group is defined by an illegal act, Rehaif suggested that the Government had to prove that a defendant knew that he was in this country illegally to know that he could not a possess firearm under subsection (g)(5)(A).  See 139 S. Ct. at 2198.  It does not follow that the Government had to prove in the present case that Gear knew his H-1B visa was categorized as a "nonimmigrant visa."

After the briefing on this motion closed, the Sixth Circuit applied Rehaif to 18 U.S.C. § 922(g)(3) and held that, under that subsection, the Government had to prove that a defendant knew certain matters of law to establish guilt.[4]

_____

[4]  This court opted not to ask the parties for supplemental briefing addressing Bowens because the case is not binding on this court and is distinguishable.

*United States v. Bowens*, --- F.3d ----, 2019 WL 4309677, at *6
(6th Cir. 2019).  Section 922(g)(3) prohibits "unlawful users" of
a controlled substance from possessing firearms.  The Sixth
Circuit held that, to prove that a defendant knew that his use of
a controlled substance was "unlawful," the Government had to
establish that the defendant had "some knowledge of federal drug
law."  *Bowens*, 2019 WL 4309677, at *6.

Even if *Bowens* was correctly decided, its rationale
does not suggest that Gear is entitled to a new trial.  Section
922(g)(5)(B), the "nonimmigrant visa" provision Gear was
convicted under, is unlike either § 922(g)(3) (the unlawful user
provision in issue in *Bowens*) or § 922(g)(5)(A) (the unlawful
presence provision in issue in *Rehaif*).  Section 922(g)(5)(B)
does not define the relevant class of persons as individuals
acting "unlawfully."  Instead, § 922(g)(5)(B) prohibits persons
who "have been admitted to the United States under a nonimmigrant
visa (as that term is defined in . . . 8 U.S.C. § 1101(a)(26))"
from owning a firearm.  For purposes of § 922(g)(5)(B), a
defendant only needs to know the nature of the visa under which
he entered the United States, not that the visa falls within a
category of visas called "nonimmigrant visas."

In that regard, § 922(g)(5)(B) is similar to the
regulation at issue in *United States v. International Minerals
and Chemical Corp.*, 402 U.S. 558 (1971).  That regulation made it

a crime to knowingly ship "hazardous materials subject to the regulations in this chapter" in interstate commerce without describing the material on a shipping paper. *Id.* at 559. The Court held that Congress used the phrase "subject to the regulations in this chapter" as a "shorthand designation for specific acts or omissions which violate the Act." *Id.* at 562. The Government had to prove that the defendant knew that he or she had shipped a hazardous material, such as sulfuric acid, but not that he or she knew that sulfuric acid was "subject to the regulations in this chapter." *Id.* at 562-64. The Court explained that its interpretation was not unfair to defendants, because the regulation addressed dangerous items that were obviously subject to regulation. *Id.* at 564-65. Under those circumstances, "the probability of regulation is so great that anyone who is aware he is in possession of [hazardous materials] must be presumed to be aware of the regulation." *Id.* at 565.

That reasoning applies to § 922(g)(5)(B). Firearms are dangerous weapons, and aliens should be aware that their ability to possess such weapons will be restricted.[5] Once an alien knows that he or she possesses a limited visa, such as an H-1B visa, there is no unfairness in applying § 922(g)(5)(B) to him. This court construes § 922(g)(5)(B)'s requirement that a defendant

---

[5] Indeed, Gear told Agent Kobayashi that "he couldn't possess a firearm in the State of Hawaii, because he was not a U.S. citizen." ECF No. 125-7, PageID # 1434.

know that he entered the United States on "a nonimmigrant visa as that term is defined in . . . 8 U.S.C. § 1101(a)(26))" as a "shorthand reference" to the types of visas, such as H-1B visas, that fall under that definition. *Int'l Minerals*, 402 U.S. at 562. To prove that Gear knew he was a member of the relevant class of persons, it suffices for the Government to prove that he knew that he had entered the United States on an H-1B visa. *See id.*

A contrary interpretation would effectively nullify § 922(g)(5)(B). Most lawyers and judges who are not immigration specialists would be unable to list, without research, all of the visas that fall under the definition set forth in 8 U.S.C. § 1101(a)(26). It is even less likely that the Government could prove beyond a reasonable doubt that a defendant possessed such knowledge. The Government will rarely have a defendant's statement that he knows the statutory definition of "nonimmigrant visa" or knows that his visa falls under that definition, and it is hard to imagine what other method of proof would be available to the Government. Consequently, an interpretation of § 922(g)(5)(B) that required the Government to prove that a defendant knew that his or her visa fell within the statutory definition of "nonimmigrant visa" would render it virtually impossible to obtain a conviction under that statute. This court

assumes that Congress did not enact an unenforceable criminal statute.

At trial, the Government needed to prove that Gear knew that he had entered the United States on an H-1B visa. The evidence established that element beyond a reasonable doubt. Agent Kobayashi testified that Gear personally provided him with a copy of his passport. ECF No. 125-7, PageID # 1454-55. That passport had a copy of Gear's H-1B visa attached. ECF No. 125-7, PageID # 1455; ECF No. 125-11, PageID # 1471. The passport also contained a stamp demonstrating that Gear entered the United States on January 9, 2017, and the stamp indicated that Gear entered on an "H1B" visa. ECF No. 125-11, PageID # 1471. Finally, Agent Kobayashi testified that Gear would have had to "go into an embassy or a consulate to obtain the visa." ECF No. 125-7, PageID # 1457. In short, the record established that Gear personally obtained the H-1B visa, personally used that visa to enter the United States, and received a stamp indicating that he used that visa to enter the United States. No reasonable juror could have doubted that Gear knew that he had entered the United States on an H-1B visa. The evidence supporting the omitted element was overwhelming.

Nor has Gear pointed to any contrary evidence. In moving for a new trial, Gear identifies no evidence demonstrating that he was unaware that he had entered the United States on an

H-1B visa. *See* ECF No. 122, PageID # 1280; ECF No. 128, PageID # 1506. As a result, "the erroneous instruction is properly found harmless" because "the jury verdict would have been the same" even if the jury had been instructed that Gear's knowledge of his immigration status was an element of the offense. *Neder*, 517 U.S. at 16.

**C.    *Rehaif* does not Permit Gear To Raise an "Innocent Possession" Defense.**

Gear also appears to argue that this court's ruling on the Government's first motion in limine is inconsistent with *Rehaif*. *See* ECF No. 125, PageID # 1280 n.1. In that motion, the Government asked this court to prohibit Gear from arguing that his possession of the rifle was excused because he had not asked his wife to send it to him. ECF No. 52-1, PageID # 592. This court granted the motion and prohibited Gear from arguing that his possession of the rifle was excused as being "for an innocent purpose or for a transitory or fleeting time period." ECF No. 87. This court clarified, however, that its ruling did not "relieve the Government of its burden of proving the defendant knowingly possessed a firearm." ECF No. 87.

*Rehaif* does not affect that decision. In *Rehaif*, the Supreme Court held that the requirement that the defendant acted "knowingly" applies to each element of § 922(g). 139 S. Ct. at 2195-96. An "innocent possession" defense applies only if the

required *mens rea* is raised from "knowingly" to "willfully."
*United States v. Johnson*, 459 F.3d 990, 996 (9th Cir. 2006).

  In *Johnson*, for instance, the defendant, a felon
prohibited from possessing a firearm, admitted that he had
knowingly possessed a gun. 459 F.3d at 992. He nevertheless
argued that he could not be convicted under § 922(g) because he
had found the gun near a school, had only possessed it for a
short time, and had as "his only intention" turning it over to
the police. 459 F.3d at 992-94. The Ninth Circuit rejected the
proposed defense as inconsistent with the *mens rea* of "knowingly"
imposed by the statute. 459 F.3d at 996. The court explained
that "only the 'willfully' *mens rea* invites inquiry into whether
the defendant had a bad motive or intent." *Id.*

  This court prohibited Gear from arguing that, even if
he knowingly possessed the rifle, the jury could acquit him if it
found that he had not asked his wife to send him the gun and had
therefore possessed it "for an innocent purpose." *See* ECF No.
87. That argument would only provide Gear a defense if § 922(g)
required the Government to prove that Gear acted wilfully.
*Johnson*, 459 F.3d at 996. Section 922(g) contains no such
requirement, and *Rehaif* does not suggest otherwise.

  Gear seems to be contending that *Rehaif* permits an
innocent possession defense because it held that "the Government
must prove that [he] knew of his status as a person barred from

21

possessing a firearm[.]"  ECF No. 122, PageID # 1280 n.1.  That argument misapprehends the "innocent possession" defense, as discussed earlier.

It also misstates the holding of *Rehaif*.  The Supreme Court held that the Government must prove that "the defendant knew he violated the material elements of § 922(g)."  *Rehaif*, 139 S. Ct. at 2196.  Those elements include (1) "a status element," in this case, being admitted to the United States on a nonimmigrant visa, (2) "a possession element," and (3) "a firearm element."  *Id.* at 2195-96.  Thus, to convict Gear, the Government had to prove that Gear knew that he had been admitted to the United States on an H-1B nonimmigrant visa, and that he knew that he possessed a firearm.  *See id.*  It did not have to prove that he knew that he could not possess a firearm.  *See United States v. Phyfier*, 2019 WL 3546721, at *4 (M.D. Ala. Aug. 5, 2019) ("In short, *Rehaif* does not require that the defendant knew he was prohibited from possessing a firearm.").

Indeed, in *Rehaif*, the Supreme Court made it clear that it was not abrogating the "well-known maxim that 'ignorance of the law' . . . is no excuse."  139 S. Ct. at 2198.  Gear's argument runs afoul of that maxim; he contends that the Government had to prove that he knew the legal significance of his actions, *i.e.,* that he knew he was legally barred from

possessing a firearm.  ECF No. 122, PageID # 1280 n.1.  Nothing in *Rehaif* supports that result.

In sum, *Rehaif* does not support Gear's proposed "innocent possession" defense.  This court's rejection of that defense does not provide a basis for a new trial.

**V.      CONCLUSION.**

Gear's motion for a new trial is DENIED.

IT IS SO ORDERED.

DATED: Honolulu, September 13, 2019.



/s/ Susan Oki Mollway
Susan Oki Mollway
United States District Judge

*United States v. Gear*, Crim. No. 17-00742 SOM; ORDER DENYING DEFENDANT'S MOTION FOR RECONSIDERATION AND/OR A NEW TRIAL.