IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CRIM. NO. 17-000742 SOM |
| | ) | |
| Plaintiff, | ) | |
| | ) | ORDER REGARDING FURTHER STAY |
| vs. | ) | OF MITTIMUS |
| | ) | |
| MELVYN GEAR, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**ORDER REGARDING FURTHER STAY OF MITTIMUS**

This court held a status conference on April 20, 2020, to discuss Defendant Melvyn Gear's release status while his appeal is pending. Gear was originally scheduled to begin serving a 15-month sentence on January 21, 2020, following a jury trial in which he was found guilty of having been an alien in possession of a firearm in violation of 18 U.S.C. § 922(g)(5)(B). Thereafter, this court, responding to Gear's motion for release pending appeal, stayed mittimus until April 20, 2020. In its order on that motion, this court held that Gear satisfied all three statutory requirements for release pending appeal. *See* ECF No. 165. This court stayed mittimus for three months, rather than granting Gear's motion in full, primarily because of the third requirement: that Gear's appeal raise a "'fairly debatable'" issue on appeal that is "'of more substance than would be necessary to a finding that it was not frivolous.'" *United States v. Berckmann*, 2019 WL 984274, at *4 (D. Haw. Feb. 28, 2019) (quoting *United States v. Handy*, 761 F.2d 1279, 1282,

1282 n.2 (9th Cir. 1985)).  This court was hoping that the law on whether Gear was raising a fairly debatable issue on appeal would develop quickly in reaction to a recent Supreme Court case.

The questions raised by Gear's appeal concern the interpretation of the Supreme Court's decision in *United States v. Rehaif*, 139 S. Ct. 2191 (2019), decided after the trial in this case had concluded.  In *Rehaif*, the Supreme Court held that, in prosecutions under 18 U.S.C. § 922(g), the Government must prove that the defendant knew that "he belonged to the relevant category of persons barred from possessing a firearm."  *Id.* at 2200.  For the purposes of § 922(g)(5)(B), the relevant category of persons includes aliens who have "been admitted to the United States under a nonimmigrant visa (as that term is defined in section 101(a)(26) of the Immigration and Nationality Act (8 U.S.C. § 1101(a)(26))."  In this court's earlier order denying Gear's motion for a new trial, this court held that, under *Rehaif*, the Government could prove that Gear knew he belonged to the relevant category of persons by proving that he knew that he possessed an H-1B visa.  Such a visa is a nonimmigrant visa under the Immigration and Nationality Act.  ECF No. 138, PageID # 1767.  Although this court, having conducted the trial before *Rehaif* was decided, had not instructed the jury on the issue of whether Gear knew he was in a category of persons barred from possessing a firearm, this court concluded that no new trial was required in

light of the actual evidence at trial and this court's understanding of the *Rehaif* knowledge requirement as applied to the charge against Gear.  Gear, however, argues that *Rehaif* requires the Government to prove that he knew that, as a legal matter, the INA defines an H-1B visa as a nonimmigrant visa.

In its order staying mittimus until April 20, 2020, this court held that Gear had raised a nonfrivolous argument. ECF No. 165, PageID # 2276.  However, this court recognized that, at any time, the Ninth Circuit (or another circuit) could issue a decision that directly addressed Gear's assertions.  It therefore stayed mittimus for three months so that it could evaluate any such developments in the law.

After evaluating the present state of the law, this court stays mittimus for three additional months.  The parties have not cited any recent decisions that directly address the issues raised by Gear's appeal.  This court's review of the law, however, reinforces the conclusion this court reached in its order denying Gear's motion for a new trial.  That conclusion is compelled by the Supreme Court's decision in *McFadden v. United States*, 575 U.S. 186, 135 S. Ct. 2298 (2015).

In *McFadden*, the Supreme Court interpreted the Controlled Substances Act, which "makes it unlawful for any person knowingly or intentionally . . . to manufacture, distribute, or dispense, or possess with intent to manufacture,

distribute, or dispense, a controlled substance." 576 U.S. ---, 135 S. Ct. at 2303 (quotation marks omitted). The CSA defines a controlled substance as "a drug or other substance, or immediate precursor, included in schedule I, II, III, IV, or V." *Id.* at ---, 135 S. Ct. at 2304 (quotation marks omitted).

The Court held that the *mens rea* requirement in the CSA applied to the entire statute. Thus, to secure a conviction, the Government had to establish that the defendant knew that the substance he had manufactured, distributed, dispensed, or possessed was controlled. *Id.* But the Government did not have to prove that the defendant knew what drugs were included on the various schedules:

> The knowledge requirement may also be met by showing that the defendant knew the identity of the substance he possessed. *Take, for example, a defendant who knows he is distributing heroin but does not know that heroin is listed on the schedules. Because ignorance of the law is typically no defense to criminal prosecution, this defendant would also be guilty of knowingly distributing "a controlled substance."*

*Id.* (emphasis added) (quotation marks omitted). In other words, the Supreme Court interpreted the CSA's reference to a "controlled substance" as a "shorthand designation" of the various controlled substances listed on the schedules. *See United States v. Int'l Minerals & Chem. Corp.*, 402 U.S. 558, 562

(1971) (offering a similar interpretation of a different statute).

   This court reads 18 U.S.C. § 922(g)(5)(B) in the same way. Under *Rehaif*, to secure a conviction, the Government must prove that the defendant knowingly possessed a firearm and knew that he had "been admitted to the United States under a nonimmigrant visa (as that term is defined in [8 U.S.C. § 1101(a)(26)]." Under 8 U.S.C. § 1101(a)(26), a nonimmigrant visa is "a visa properly issued to an alien as an eligible nonimmigrant by a competent officer as provided in this chapter." To understand the term "eligible nonimmigrant," the court turns to 8 U.S.C. § 1101(a)(15), which explains that "[t]he term 'immigrant' means every alien except an alien who is within one of the following classes of nonimmigrant aliens." Section 1101(a)(15) lists every category of nonimmigrant alien.

   The nonimmigrant categories correspond to the various nonimmigrant visas issued by the United States. *Compare* 8 U.S.C. § 1101(a)(15) *with* United States Department of State, Directory of Visa Categories, *available at* https://travel.state.gov/content/travel/en/us-visas/visa-information-resources/all-visa-categories.html (last visited April 20,2020). As one example, Gear first entered the United States on an "E-3" nonimmigrant visa. That visa is based on subsection (E)(iii) of 8 U.S.C.

§ 1101(a)(15), which classifies as a nonimmigrant any alien who enters the country "solely to perform services in a specialty occupation in the United States if the alien is a national of the Commonwealth of Australia." When Gear illegally possessed a firearm, he was in the United States on an "H-1B" nonimmigrant visa. That visa is based on subsection (H)(i)(b), which is not limited to Australian nationals and classifies as a nonimmigrant any alien who temporarily enters the United States to work in a specialty occupation.

Like the Controlled Substances Act, the INA defines the term "nonimmigrant visa" by providing a list of nonimmigrant visas. The reasoning in *McFadden* therefore appears applicable here. That is, just as the Government satisfies the knowledge requirement in a drug case by showing that a defendant knowingly possessed heroin (but without needing to show that the defendant knew that heroin was on a drug schedule), the Government can satisfy the *Rehaif* knowledge requirement by showing that Gear knew that he possessed an H-1B visa that allowed only a temporary stay in the United States. The Government need not show that Gear knew that the visa was on some list of what the law defines as "nonimmigrant visas."

*Rehaif* did not directly address § 922(g)(5)(B). 139 S. Ct. at 2200 ("We express no view, however, about what precisely the Government must prove to establish a defendant's knowledge of

6

status in respect to other § 922(g) provisions not at issue here."). This court does not read *Rehaif* as implicitly overruling *McFadden*, a case decided less than four years ago.

Indeed, the same considerations weighed by the Supreme Court in *Rehaif* favor this court's interpretation of § 922(g)(5)(B). For instance, in *Rehaif*, the Supreme Court noted the importance of interpreting a statute's *mens rea* requirement in a manner that reflects a defendant's culpability:

> Beyond the text, our reading of § 922(g) and § 924(a)(2) is consistent with a basic principle that underlies the criminal law, namely, the importance of showing what Blackstone called "a vicious will." As this Court has explained, the understanding that an injury is criminal only if inflicted knowingly is as universal and persistent in mature systems of law as belief in freedom of the human will and a consequent ability and duty of the normal individual to choose between good and evil. Scienter requirements advance this basic principle of criminal law by helping to separate those who understand the wrongful nature of their act from those who do not. . . .
>
> Without knowledge of that status, the defendant may well lack the intent needed to make his behavior wrongful. His behavior may instead be an innocent mistake to which criminal sanctions normally do not attach.

139 S. Ct. at 2196 (citations and quotation marks omitted); *see generally Liparota v. United States*, 471 U.S. 419, 426 (1985) (rejecting an interpretation of a statute that would "criminalize a broad range of apparently innocent conduct").

7

Requiring the Government to prove that a defendant knew how the INA defines a "nonimmigrant visa" does nothing to prevent the criminalization of innocent conduct. A defendant who knows that he is present in the country on an H-1B visa and nevertheless possesses firearms is not any less culpable than a defendant who also knows that an H-1B visa is on a statutory list of "nonimmgirant visas." As this court explained in its order denying Gear's motion for a new trial, in both situations the defendant would be aware that he was present in the United States on a limited visa. In both situations, a foreigner should know that he may face restrictions on the possession of a dangerous weapon like a firearm. ECF No. 138, PageID # 1770. Gear's proposed interpretation of § 922(g)(5)(B)'s state of mind requirement goes beyond what is needed to ensure that the statute only punishes culpable conduct.

Finally, as this court explained in its order denying Gear's motion for a new trial, a contrary interpretation would effectively nullify § 922(g)(5)(B). ECF No. 138, PageID # 1771-72. This court continues to believe that Congress did not intend to enact an unenforceable statute.

In sum, this court's further review of the law reinforces its conclusion that the Government satisfied the knowledge requirement by establishing that Gear knew that he possessed an H-1B visa. The Government has advanced an

8

alternative theory for sustaining the judgment, relying on an exhibit that refers to a nonimmigrant visa and on trial testimony relating to that exhibit.  Whatever the theory, at this point this court is without guidance from caselaw expressly examining how *Rehaif* applies in the context of § 922(g)(5)(B), and it is the court's hope that a further stay of mittimus might yield such guidance.  Such a stay appears particularly appropriate in light of Gear's age and the COVID-19 pandemic that is currently affecting the nation and that raises huge concerns in prisons.  District courts are now routinely receiving motions for compassionate release from prisoners seeking to avoid infection in prisons, where social distancing is nearly impossible.  The court is reluctant to order Gear into such an environment if he is raising a nonfrivolous argument on appeal and is complying with the conditions of his release.

This court therefore stays mittimus until further order by this court and sets a status conference for July 20, 2020, at 9:30 a.m.  At the status conference, the parties should be prepared to discuss whether any new court decisions directly address the questions raised by Gear's appeal.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, April 27, 2020



/s/ Susan Oki Mollway
Susan Oki Mollway
United States District Judge

*United States v. Gear*, Crim. No. 17-00742 SOM; ORDER REGARDING FURTHER STAY OF MITTIMUS